KENNETH S. GAINES, ESQ. SBN 049045
ken@gaineslawfirm.com
DANIEL F. GAINES, ESQ. SBN 251488
daniel@gaineslawfirm.com
ALEX P. KATOFSKY, ESQ. SBN 202754
alex@gaineslawfirm.com
**GAINES & GAINES, APLC**
21550 Oxnard Street, Suite 980
Woodland Hills, CA 91367
Telephone: (818) 703-8985
Facsimile:  (818) 703-8984

Attorneys for Plaintiff Catherine Carter
and Proposed Class Counsel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE CARTER, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>WI SPA, LLC, a California limited liability company; and DOES 1 through 10, inclusive.<br><br>        Defendants. | CASE NO.: 2:13-cv-00580-SVW-CW<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**DATE: July 15, 2013**<br>**TIME: 1:30 P.M.**<br>**COURTROOM: 6**<br>**JUDGE: Hon. Stephen V. Wilson** |

**TO THE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on July 15, 2013 at 1:30 p.m., in Courtroom 6 of the above-entitled Court, located at 312 N. Spring Street, Los Angeles, California 90012, Plaintiff Catherine Carter ("Plaintiff" or "Carter") will, and hereby does, move this Court for an order granting preliminary approval of a proposed class action settlement.   The terms of the settlement are contained within the Joint Stipulation of Settlement and Release filed herewith.   This motion is unopposed by Defendant.

This motion will be based on this Notice and accompanying Memorandum of Points and Authorities, the Declaration of Daniel F. Gaines, the Joint Stipulation of Settlement and Release (including exhibits), all filed herewith, and on such further evidence and argument as may be presented at the hearing.

Dated:  June 10, 2013                    Respectfully Submitted,

                                         GAINES & GAINES, APLC


                                         By:   /s/ Daniel F. Gaines
                                               Kenneth S. Gaines, Esq.
                                               Daniel F. Gaines, Esq.
                                               Alex P. Katofsky, Esq.
                                               Attorneys for Plaintiff Catherine Carter
                                               and Proposed Class Counsel

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................. 1

II.     FACTUAL BACKGROUND ................................................. 3

III.    SUMMARY OF SETTLEMENT TERMS ............................ 4

    A.      The Settlement Class ................................................ 4

    B.      Settlement Consideration .......................................... 5

        1.      "Known Customer Consideration" ................. 5

        2.      "Declaration Consideration" .......................... 5

        3.      "Documentation Consideration" ..................... 6

        4.      Payment of Claims Administration Expenses ............. 6

        5.      Service Payment to and General Release by the Class Representative ............................................ 6

        6.      Attorneys' Fees and Costs to Class Counsel ............... 6

    C.      Injunctive Relief and Consent Decree ...................... 7

    D.      The Release by Plaintiff and Class Members ........... 7

IV.     PRELIMINARY SETTLEMENT APPROVAL PROCESS ............ 8

    A.      Provisional Certification of the Settlement Class ................ 10

    B.      Settlement Administration Timeline ....................... 10

V.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............................................................... 11

    A.      The Terms of the Proposed Settlement Provide Important Injunctive Relief and Reasonable Compensation for Plaintiff's and Class Members' Damages ..................................................... 14

        1.      The Terms of the Proposed Settlement Provide Important Injunctive Relief and Reasonable Compensation for Plaintiff's and Class Members' Damages ......................... 14

        2.      The Settlement Provides a Significant Monetary Benefit to Class Members ................................................. 15

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS
### (continued)

a. Discussion of the Settlement Consideration ...........................15

b. Settlement Certificates are Appropriate Consideration in the Context of This Case....................................................................16

3.   The Settlement's Financial Terms Reflect a Fair Discount off the Maximum Value of the Case Based on Litigation Risks, and The Terms Are Far More Favorable Than Other Similar FACTA Settlements ................................................................................18

B.   The Settlement is the Product of Serious, Arm's-Length, Informed Negotiations and There are no Indications Present to Doubt its Fairness.....................................................................................20

VI.   PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE .................20

A.   FRCP 23(a) Requirements For Class Certification Are Met ...............21

1.   Numerosity ...................................................................21

2.   Commonality ................................................................22

3.   Typicality.....................................................................22

4.   Adequacy of Representation...........................................23

B.   FRCP 23(b)(3) Requirements for Class Certification are Met ............24

1.   Predominance ...............................................................24

2.   Superiority ...................................................................24

VII.   THE PROPOSED CLASS NOTICE IS APPROPRIATE ............................25

A.   The Class Notice Satisfies Due Process..............................................25

B.   The Proposed Notice is Accurate and Informative ..............................25

VIII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED................26

IX.   CONCLUSION ............................................................................27

# TABLE OF AUTHORITIES

## Statutes and Rules

15 U.S.C. § 1681 *et seq.* ............................................................1, 3, 7, 14, 16

28 U.S.C. § 1712 ....................................................................................16, 17

Fed. R. Civ. P. 23 ...........................................................................8, 17, 21-26

## Cases

*Acosta v. Trans Union LLC,*
    243 F.R.D. 377 (C.D. Cal. 2007) ................................................................12

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ....................................................................................24

*Bateman v. American Multi-Cinema, Inc.,*
    623 F.3d 708 (9th Cir. 2010) .......................................................................19

*Class Plaintiffs v. City of Seattle,*
    955 F. 2d 1268 (9th Cir. 1992) ......................................................................9

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ......................................................................20

*Cox v. American Cast Iron Pipe,*
    784 F.2d 1546 (11th Cir. 1986) ...........................................................21, 22, 24

*Hanlon v. Chrysler Corp.,*
    150 F. 3d 1011 (9th Cir. 1998) .............................................................9, 22-25

*Harris v. Vector Marketing Corp.,*
    2011 WL 1627973, *7 (N.D. Cal. April 29, 2011) ...........................................9

*Gen. Tel. Co. of the SW v. Falcon,*
    12 S.Ct. 2364, 457 U.S. 147 (1982) .............................................................22

*Griffin v. Carlin,*
    755 F.2d 1516 (11th Cir. 1985) ...................................................................23

# TABLE OF AUTHORITIES

(continued)

*In re Corrugated Container Antitrust Litig.,*
 643 F.2d 195 (5th Cir. 1981) ...........................................................................14

*In re Prudential Securities, Inc.,*
 163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................................12

*In re Tableware Antitrust Litig.,*
 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............................................................9

*In re Traffic Exec. Ass'n,*
 627 F.2d 631 (2d Cir. 1980) ..............................................................................12

*Martens v. Smith Barney,*
 181 F.R.D. 243 (S.D.N.Y. 1998) ......................................................................20

*Molski v. Gleich,*
 318 F.3d 937 (9th Cir. 2003) .............................................................................21

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
 221 F.R.D. 523 (C.D. Cal. 2004) .........................................................................8

*Officers for Justice v. Civ. Serv. Comm'n of San Francisco,*
 688 F.2d 615 (9th Cir. 1982) .............................................................................20

*Ragsdale v. SanSai USA, Inc.,*
 07cv1246-WQH (CAB) (S.D. Cal.) ...................................................................17

*Sakamoto v. One Parking, Inc.,*
 :11-cv-01249 MLG (C.D. Cal.) .........................................................................19

*Tchoboian v. FedEx Office and Print Services, Inc.,*
 (C.D. Cal., No. 8:10-cv-01008-JAK-MLGx) .............................................18, 19

*Torrisi v. Tucson Elec. Power Co.,*
 8 F.3d 1370 (9th Cir. 1993) ..........................................................................12, 13

*True v. American Honda Motor Co.,*
 749 F.Supp.2d 1052, 1069 (C.D. Cal. 2010) .....................................................17

# TABLE OF AUTHORITIES

(continued)

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ........................................................................... 11

*Welmer v. Syntex*,
    117 F.R.D. 641 (N.D. Cal. 1987) ..................................................................... 23

*Yamamoto v. Omiya*,
    564 F.2d 1319 (9th Cir. 1977) ......................................................................... 12

## Treatises

2 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions*, § 8.21 (2d ed. 1985) ........................................... 26

2 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions*, § 8.39 (2d ed. 1985) ........................................... 26

4 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions*, § 11.22 (4th ed. 2002) .................................... 9, 10

4 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions*, § 11.25 (4th ed. 2002) .............................. 9, 12, 13

4 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions*, § 11.26 (4th ed. 2002) ....................... 9, 10, 21-22

4 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions*, § 11.41 (4th ed. 2002) ....................... 9, 10, 11, 13

Manual for Complex Litigation (Third) § 30.41 (1995) ............................. 8, 9, 12-13

Manual for Complex Litigation (Third) § 30.211 (1995) ....................................... 26

Manual for Complex Litigation (Third) § 30.212 (1995) ....................................... 26

Manual for Complex Litigation (Fourth) § 21.62 (2004) ........................................ 8

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

## I.     INTRODUCTION

The parties to this action are pleased to report that they have reached a fair and reasonable agreement to settle this matter following the exchange of discovery and arm's-length negotiations with the assistance of a skilled mediator.  Plaintiff Carter, on behalf of herself and others similarly situated, and Defendant (Plaintiff and Defendant are collectively referred to herein as the "Parties") seek preliminary approval of their proposed class action settlement.

The settlement provides real, valuable relief to thousands of former customers and potential future customers of Defendant Wi Spa, LLC ("Defendant" or "Wi Spa").

Plaintiff brought this action against Wi Spa, a popular day spa in Los Angeles' Korea Town neighborhood, after being subject to Wi Spa's failure to truncate the expiration dates on her credit card receipt when she made a purchase in December 2012.  She contends that Wi Spa violated the Fair and Accurate Credit Transactions Act (15 U.S.C. §§ 1681c(g)) of the Fair Credit Reporting Act ("FACTA")).[1]

Through discovery, Plaintiff learned that Wi Spa implemented a new credit/debit card processing system on January 25, 2012 which caused credit and debit card receipts to show customers' full expiration dates.  The practice ceased on December 19, 2012, shortly after Defendant received notice of this lawsuit.  During this period, Defendant generated an estimated 70,000 allegedly defective receipts.  Declaration of Daniel F. Gaines in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Gaines Decl.") at ¶ 30.

---

[1] Defendant does not believe that any liability to Plaintiff or Class Members exists, or that Plaintiff or Class Members are entitled to any recovery.  In addition, Defendant contends that Plaintiff's claims are not suitable for class action treatment.  However, Defendant has made a business decision to resolve the matter on the terms set forth in the settlement agreement submitted hereto for approval by this Court.

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

As a result of this settlement, Defendant has agreed that the practice at the heart of this litigation – the failure to redact private information from consumers' credit and debit card receipts – will cease going forward.  Gaines Decl. at ¶ 19.

Although the Parties understand that no class member, including Plaintiff, has suffered any actual damages from the violations alleged, the compromise provides the settlement class members with settlement certificates and entrance certificates ranging in value from $10 to $100, with thousands of Class Members eligible to receive multiple certificates with an aggregate value of up to $145 (as further detailed herein).  Stip. at ¶ 50.

The estimated value of the settlement consideration, including attorneys' fees and costs and administration expenses to be paid separately by Defendant, exceeds $7,000,000.  This is in addition to the value of the injunctive relief agreed upon by the parties.  Gaines Decl. at ¶ 20.

This proposed settlement[2] resolves all of the Named Plaintiff's and settlement class members' claims against Defendant, and satisfies all of the criteria for preliminary settlement approval under federal law, and is fair, reasonable, and adequate.  Accordingly, the Parties request that the Court:

1. Provisionally certify the proposed settlement class for settlement purposes;

2. Grant preliminary approval of the proposed Settlement;

3. Approve the proposed notice program and the forms proposed by the parties (collectively the "Settlement Documents");

4. Confirm the appointment of Plaintiff Catherine Carter as Class Representative;

---

[2] The Parties' Joint Stipulation of Settlement and Release is attached to the Declaration of Daniel F. Gaines, submitted herewith, as Exhibit "A."

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

5.     Confirm the appointment of Kenneth S. Gaines, Daniel F. Gaines, and Alex P. Katofsky of Gaines & Gaines, APLC as Settlement Class Counsel;

6.     Confirm the appointment of Rust Consulting, Inc. as settlement administrator;

7.     Set deadlines for mailing Settlement Documents and for submitting a claim, opting out of, or objecting to the settlement; and

8.     Schedule a final approval hearing.

## II.   FACTUAL BACKGROUND

On or about December 20, 2012, Plaintiff Catherine Carter filed a lawsuit against Wi Spa and Doe defendants in the Superior Court for the State of California, in and for the County of Los Angeles, Case Number BC497946, alleging violations of FACTA stemming from Defendant's failure to redact credit and debit card expiration dates on receipts provided to its customers.  Gaines Decl." at ¶ 7.

On or about January 28, 2013, Defendant removed the Action to this Court.  It subsequently filed an answer to the Complaint, denying all claims alleged therein. Gaines Decl. at ¶ 8.

Plaintiff alleges in her Complaint that, during the applicable five year limitations period (15 U.S.C. § 1681p(2)), Wi Spa failed to comply with FACTA by willfully printing its customers' credit and debit card expiration dates on printed receipts.  As a result, Plaintiff, on behalf of herself and a putative class of affected consumers, seeks penalties of between $100 and $1,000 per printed receipt, putative damages, attorneys' fees and costs.  15 U.S.C. § 1681n; Gaines Decl. at ¶ 9.

The parties exchanged informal discovery which was used by Plaintiff and her counsel to assess the strength and value of her class claims.  Based on this informal discovery exchanged, Plaintiff and her counsel prepared a damage calculation. Gaines Decl. at ¶ 10.

\\

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    On May 3, 2013, the Parties participated in a full-day mediation with respected

2    mediator Michael Dickstein, Esq. in Los Angeles, California.  The Parties did not

3    reach a settlement at the mediation; however, they continued their settlement

4    discussions with Mr. Dickstein and on or about May 10, 2013, they entered into a

5    memorandum of understanding detailing the terms of a proposed settlement.  All of

6    the terms of the Parties' settlement are contained within the Joint Stipulation of

7    Settlement and Release attached as Exhibit "A" to the Gaines Decl.  Gaines Decl. at ¶

8    11.

9    At all times, the Parties' settlement negotiations have been non-collusive,

10   adversarial, and at arm's length.  Gaines Decl. at ¶ 12.

11   Discussions between counsel for the Parties, informal discovery, as well as the

12   investigation and evaluation of the claims of Plaintiff by the Parties, have permitted

13   each side to assess the relative merits of the claims and the defenses to those claims.

14   The Parties agree that the above-described investigation and evaluation, as well as the

15   information exchanged during settlement negotiations and mediation, are more than

16   sufficient to assess the merits of the respective Parties' positions and to compromise

17   the issues on a fair and equitable basis.   Based on their own independent

18   investigations and evaluations, Class Counsel is of the opinion that the consideration

19   and terms of the Settlement as described herein, considering the risk of loss on class

20   certification, the risk of loss on the merits, the risk of Defendant's ability to pay a

21   substantial judgment, and the risk of a reduction in any damages sought or awarded,

22   is fair, reasonable, and adequate in light of all known facts and circumstances, and is

23   in the best interests of the Class.  Gaines Decl. at ¶ 13.

24   **III.    SUMMARY OF SETTLEMENT TERMS**

25   The significant terms of Stipulation for Settlement are set forth below.

26   **A.    The Settlement Class**

27   The Settlement Class is defined as:

28

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

All persons in the United States to whom, through use of a machine used by Defendant, were provided with an electronically printed receipt at the point of a sale or transaction on which the expiration date of the person's credit or debit card was printed at any time between January 25, 2012 and December 19, 2012.

Stip. at ¶ 6.

### B.     Settlement Consideration

Defendant's records do not indicate the name or contact information for Class Members.  However, Defendant does maintain customer lists which contain the names and contact information for individuals who are its recent customers (and those most likely to be Class Members).  The Parties have agreed upon a distribution formula which directly distributes settlement certificates – no claim form necessary – to all persons on Wi Spa's customer lists.  In addition, those who verify by signature that they are a Class Member will get additional consideration, and those who prove with documentation they are a Class Member will get higher levels of consideration, as detailed below.

### 1.     "Known Customer Consideration"

All Class Members who are members of Wi Spa or who are contained on Wi Spa's customer list (approximately 4,600 known customers of Wi Spa) shall be mailed or e-mailed (1) one Entrance Certificate (valued at $25), and (2) one Settlement Certificate (valued at $20) ("Known Customer Consideration").  This category of Class Members shall automatically be deemed Qualified Claimants.  Stip. at ¶ 50.A.  No claim form is necessary for these Class Members to recover Known Customer Consideration; when the Effective Date has passed, they will be mailed or e-mailed their settlement and entrance certificates. *Id.*

### 2.     "Declaration Consideration"

All Class Members who timely submit a Claim Form to the Claims Administrator, either electronically on the Settlement Website or by U.S. Mail, on

which they sign to verify under penalty of perjury that they made one or more debit or credit card purchases from Wi Spa at any time between January 25, 2012 and December 19, 2012, shall be mailed or e-mailed one Settlement Certificate valued at $10 ("Declaration Consideration").  A Class Member from this category must submit a timely Claim Form in order to be considered a Qualified Claimant.  Stip. at ¶ 50.B.

### 3.    "Documentation Consideration"

All Class Members who timely submit a Claim Form to the Claims Administrator, either electronically on the Settlement Website or by U.S. Mail, with which they include an original or legible photocopy of (1) a receipt from Wi Spa which shows a credit or debit card expiration date, or (2) a credit or debit card statement which shows the Class Member made a purchase from Wi Spa at some time between January 25, 2012 and December 19, 2012, shall be mailed or e-mailed one Settlement Certificate valued at $100 ("Documentation Consideration").  A Class Member from this category must submit a timely Claim Form in order to be considered a Qualified Claimant.  Stip. at ¶ 50.C.

Qualified Claimants entitled to receive Known Customer Consideration above may also recover Declaration Consideration <u>or</u> Documentation Consideration, but not both.  To do so, they must submit a valid and timely Claim Form with the required verification or documentation.  Stip. at ¶ 50.D.

### 4.    Payment of Claims Administration Expenses

The Parties have agreed to jointly utilize third-party claims administrator Rust Consulting, Inc. to give notice of and communicate with Class Members regarding the Settlement.  Defendant shall bear all expenses of the Claims Administrator to fulfill its obligations as required by this Agreement.  Defendant shall pay the Claims Administrator its fees as incurred and billed.  Stip. at ¶ 60.

### 5.    Service Payment to the Class Representative

The Settlement provides that Plaintiff Carter may request a service payment of up to $6,000, subject to the Court's approval, which is intended to compensate her for

1) her damages recoverable as a result of the claims alleged in the Complaint, and 2) the time, expense, and risk she has expended in bringing this lawsuit for the benefit of Class Members.  Stip. at ¶ 54.G.  The service payment, if awarded, shall be borne exclusively by Defendant separate and apart from all other payments and services it is obligated to provide by the Settlement.  *Id.*

### 6.    Attorneys' Fees and Costs to Class Counsel

The Settlement provides that Plaintiff's counsel may request up to $250,000 as an award of attorneys' fees, representing approximately 3.6% of the total value of the settlement consideration, in consideration of the time and effort they have expended for the benefit of Plaintiff and Settlement Class Members.  Included in the $250,000 amount to be requested will be for reimbursement of Plaintiff's counsel's litigation costs actually and reasonably incurred during the course of this litigation, estimated to be approximately $12,000.  All attorneys' fees and costs awarded following a further motion by Plaintiff's counsel at the final approval stage shall be borne exclusively by Defendant separate and apart from all other payments and services they are obligated to provide by the Settlement.  Stip. at ¶ 54.F.

### C.    Injunctive Relief and Consent Decree

As a direct result of this Action, Wi Spa shall cease printing credit and debit card expiration dates, and shall print no more than the last five (5) digits of credit or debit card numbers, on credit and debit card receipts provided to its customers, and shall fully comply with the provisions of 15 U.S.C. §§ 1681 *et seq*.  This injunctive relief provision shall be memorialized in a Consent Decree to be effective for no less than five years and which shall be submitted for Court approval as part of the Final Order.  Stip. at ¶ 52.

### D.    The Release by Plaintiff and Class Members

The release, to which all Class Members (except for those who submit a valid and timely request for exclusion) will be bound, is as follows:

1
2
3
4
5

> Upon Final Approval, each Settling Plaintiff and each member of the Class who has not timely and properly opted out of the Settlement shall be deemed to have fully, finally, and forever released Defendant from any and all claims which were alleged in, or which arise from the facts alleged in, the Action from January 25, 2012 through December 19, 2012.

6

Stip. at ¶¶ 10, 53.

7

## IV.   PRELIMINARY SETTLEMENT APPROVAL PROCESS

8
9
10
11

A class action may not be dismissed, compromised or settled without court approval. Fed. R. Civ. P. ("FRCP") 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir.2008).

12
13
14
15
16
17
18
19
20

Judicial proceedings under the Federal Rules of Civil Procedure have led to a defined procedure and specific criteria for settlement approval in class actions that are thoroughly described in the Manual for Complex Litigation (Fourth) ("*Manual* (Fourth)") § 21.62 (2004). Federal Rule of Civil Procedure 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litigation (Third) § 30.41 (1995)).

21
22
23
24
25
26
27
28

> [T]he Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See Alvarado v. Nederend*, 2011 WL 90228, at *5 (E.D. Cal. Jan.11, 2011) (granting preliminary approval of settlement in wage and hour class action); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D.Cal.2008); *Collins v. Cargill Meat Solutions Corp.*,

2011 WL 837140, at *6 (E.D.Cal. Mar.9, 2011) (granting preliminary approval of settlement in wage and hour class action); Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation by the court of the fairness of the proposed settlement, including a determination that there are no obvious deficiencies such as indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys. . . ."). Closer scrutiny is reserved for the final approval hearing.

*Harris v. Vector Marketing Corp.*, 2011 WL 1627973, *7 (N.D. Cal. April 29, 2011). *See also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1027 (9th Cir. 1998) (the court's task is to "balance a number of factors," including "the risk, expense, complexity, and likely duration of further litigation," "the extent of discovery completed and the stage of the proceedings," and "the amount offered in settlement"). This procedure for preliminary approval of settlement agreements, endorsed by the leading class action commentator, Professor Newberg, and commonly used by Federal courts, safeguards class members' procedural due process rights and enables a court to fulfill its role as the "guardian" of the class. *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* ("*Newberg*"), § 11.22 (4th ed. 2002).

The approval or rejection of the proposed settlement is committed to the Court's sound discretion. *See Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992) (in the context of a class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon a strong showing of abuse of discretion).

The Court's preliminary evaluation of the proposed settlement purports to determine whether it is within the permissible "range of reasonableness" and thus, whether the notice to the class is appropriate. 4 *Newberg* § 11.25-26; Manual for Complex Litigation (Third) ("*Manual* (Third)") § 30.41 (1995).

- 9 -

## A.    Provisional Certification of the Settlement Class

The Parties request that the Court provisionally certify the proposed Settlement Class.  Provisional class certification is appropriate at the preliminary approval stage where, as here, the proposed settlement class (as defined in the parties' Settlement) has not previously been certified by the Court, and the requirements for certification are met.  4 *Newberg* § 11.22; *see generally*, Gaines Decl. at ¶¶ 28-37.  Pragmatically, provisional class certification facilitates distribution of notice on the terms of the proposed settlement and the date and time of the final approval hearing to all settlement class members.  *See Manual* (Third) § 30.41.

The additional rulings sought by this motion – approving the form, content and distribution of the Settlement Documents and scheduling a formal fairness hearing – facilitate the settlement approval process, and are also traditionally made at this preliminary approval stage.  4 *Newberg* § 11.26.

## B.    Settlement Administration Timeline

The following schedule sets forth a proposed sequence for the relevant dates and deadlines embodied in the Settlement, conditioned upon this Court granting preliminary approval of the proposed Settlement.  This is outlined in the Proposed Order filed herewith.  *See* Stip. at ¶¶ 61-71:

| | |
|---|---|
| Last day for Defendant to provide to the Claims Administrator the names, last known e-mail and physical address and telephone information, if known, for all persons who quality to receive Known Customer Consideration ("Class Data") | 10 calendar days after the Court grants Preliminary Approval of the Settlement |
| Last day for Claims Administrator to send via e-mail or United States First Class Mail the Court-approved Notice of the Class Action Settlement, in a form substantially similar to that attached to the Stipulation for Settlement as Exhibit 1, to the Class Members for whom an e-mail address or physical address is known | 10 calendar days after the Claims Administrator receives the Class Data list |
| Period of time for the Claims Administrator to cause to be published, in the Southern California edition(s) of the Los Angeles Times, the Short Form Notice, in a form substantially similar to that attached to the Stipulation for | Between 10 and 20 calendar days after the Claims Administrator receives the Class Data list |

| Settlement as Exhibit 2 | |
|---|---|
| Period of time for the Short Form Notice to be published one additional time in the Southern California edition(s) of the Los Angeles Times (i.e. two times total) | Between 25 and 35 calendar days after the Claims Administrator receives the Class Data list |
| Last day for Class Members to postmark valid Claim Forms to the Claims Administrator | 60 days from the date Class Notice is mailed by Claims Administrator |
| Last day for requests for exclusion from the settlement and claims for a cash payment to be postmarked by Class Members | 60 days from the date Class Notice is mailed by Claims Administrator |
| Last day for Plaintiff to file motion for final approval of settlement and application for attorneys' fees and costs, and class representative's service payment | 7 calendar days after the conclusion of the Claims Period |
| Last day for Class Members to file and serve objections to the settlement | 14 calendar days after the conclusion of the Claims Period |
| Last day for the Parties to reply to any objections filed by Class Members | No later than 21 days after the conclusion of the Claims Period, or 10 days prior to the final approval hearing, whichever date is later |
| Hearing on motion for final approval of settlement and application for attorneys' fees and costs and class representative's service payment | Approximately 121 days after the Court enters the preliminary approval order |

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See* 4 *Newberg* § 11.41 (and cases cited therein); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Preliminary evaluation of class action settlements is intended to determine only whether the proposed settlement is within the range of possible approval or whether it is potentially fair, as the Court will make a final determination on adequacy at the final approval hearing.  *See Acosta v. Trans Union LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007); *In re Traffic Exec. Ass'n*, 627 F.2d 631, 633-34 (2d Cir. 1980); 4 *Newberg* § 11.25.

The Court thus has broad powers to determine whether a proposed settlement is fair under the circumstances of the case, *see Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Acosta*, 243 F.R.D. at 384 (citing *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977)), and preliminary approval of a settlement agreement should be granted unless there are reasons to doubt its fairness or there are other "obvious deficiencies" in the proposed settlement making it clear it would not ultimately weather a final approval hearing.  *See In re Prudential Securities, Inc.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

To make this fairness determination, courts consider several relevant factors, including the strength of the plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, as well as the experience and views of counsel.  *Torrisi*, 8 F.3d at 1375.  This list of factors is not exclusive, however, and the court may balance and weigh factors differently depending on the factual circumstances of each case. *See id.* at 1376.

The *Manual* summarizes the preliminary approval criteria as follows:

> "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval**,** the court should direct that notice . . . be given to the Class Members of a

formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement."

*Manual* (Third) § 30.41; *see also* 4 *Newberg* § 11.25.

When examining settlement agreements, a presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. 4 *Newberg* § 11.41.

Here, the proposed Settlement clearly falls well within the range of reasonableness as the terms of the agreement are fair and adequate and provide a good result for Plaintiff and Class Members, especially considering the complexities of the case, the substantial risk inherent in non-certification, and the risks of not prevailing on the merits at trial. Gaines Decl. at ¶¶ 10-27. Further, Plaintiff has engaged in an exchange of informal discovery, as well as extensive research into the applicable areas of law. The Parties have engaged in informed, good faith, arms-length negotiations with adequate access to necessary information, and did so with the assistance of a highly regarded and experienced mediator. *See generally* Gaines Decl. at ¶¶ 10-27.

Both Plaintiff's counsel and Defendant's counsel are experienced in class action matters and are capable of assessing the strengths and weaknesses of claims and the benefits of the proposed Settlement under the circumstances of the case and in the context of a private, consensual agreement. Plaintiff's counsel believes the Settlement offers a fair result to Class Members, commensurate with the risks of further litigation. Accordingly, preliminary approval of the Settlement is appropriate. Gaines Decl. at ¶ 2-6, 10-27.

\\

\\

**A.     The Terms of the Proposed Settlement Provide Important Injunctive Relief and Reasonable Compensation for Plaintiff's and Class Members' Damages**

Ultimately, a settlement should stand or fall on the adequacy of its terms.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).   The Settlement reflects an excellent compromise.

**1.  The Settlement Provides for Important Injunctive Relief to Prevent Future Identity Theft of Class Members and the General Public.**

The basis of the Class Members' claims is a statute which renders the printing of consumers' credit and debit card expiration dates on printed receipts tortious conduct, resulting in imposition of penalties between $100 and $1,000 per printed receipt, plus putative damages, attorneys' fees and costs.  Gaines Decl. at ¶¶ 9, 17.

Based upon the discovery completed thus far and the nature of the claims alleged, neither Plaintiff Carter, nor any other Class Member, has suffered actual damages as a result of the conduct alleged in the lawsuit.  In fact, it is suspected that few – if any – Class Members even realize they have been subject to the harm alleged on their behalf.  Gaines Decl. at ¶ 18.

However, the purpose of the relevant laws – to reduce identify theft – will be advanced by this Settlement.  Pursuant to the Settlement, as a direct result of this Action, Defendant shall cease printing credit and debit card expiration dates, and shall print no more than the last five (5) digits of credit or debit card numbers, on credit and debit card receipts provided to its customers, and shall fully comply with the provisions of 15 U.S.C. §§ 1681 *et seq*.  This injunctive relief provision shall be memorialized in a Consent Decree to be effective for no less than five years and which shall be submitted for Court approval as part of the Final Order.  Stip. at ¶ 52; Gaines Decl. at ¶ 19.

\\

### 2.   The Settlement Provides a Significant Monetary Benefit to Class Members.

#### a.   Discussion of the Settlement Consideration

Approximately 70,000 credit and debit card transactions (receipts generated with a full expiration date) were at issue in this case, meaning the minimum statutory liability exposure faced by Defendant (if Plaintiff prevailed on a classwide basis) was $7,000,000 (70,000 x $100).   The parties' negotiated settlement provides for consideration – in the form of non-cash settlement certificates which may be redeemed at Wi Spa –with a maximum value in excess of $7,000,000.  Gaines Decl. at ¶ 20.

All persons who Wi Spa identifies from its customer lists (approximately 4,600) will automatically be mailed or e-mailed, after final approval, a $20 settlement certificate and an entrance certificate (entry to its facility costs $25).  Gaines Decl. at ¶ 21; Stip. at ¶ 50.A.

All persons who submit a claim verifying under penalty of perjury that they made a purchase from Wi Spa and were issued a defective receipt will be mailed or e-mailed, after final approval, a $10 settlement certificate.  Gaines Decl. at ¶ 22; Stip. at ¶ 50.B.

All persons who submit a claim with supporting documentation in the form of a Wi Spa receipt showing a credit/debit card expiration date or a credit/debit card statement showing they made a purchase from Wi Spa during the affected time frame (January 25, 2012 through December 19, 2012) will be mailed or e-mailed, after final approval, a $100 settlement certificate.  Gaines Decl. at ¶ 23; Stip. at ¶ 50.C.

Known customers may also submit a claim and receive a $10 or $100 settlement certificate, in addition to their $20 settlement certificate and entrance certificate.  These individuals may recover up to $120 in settlement certificates and an entrance certificate valued at $25 – or $145 in benefits.  Gaines Decl. at ¶ 24; Stip. at ¶ 50.D.

The entrance certificates are valid for one year from the date of issuance and are fully transferable without limitation. They may not be redeemed for cash. Wi Spa is popular in the community for its saunas, steam baths, whirlpools, and gym, and many people visit to use these facilities and pay only the entrance fee. *See* www.wispausa.com (last visited June 6, 2013). As such, an entrance certificate can be used without the need to make an additional purchase (e.g. it's not simply a discount on another product). Gaines Decl. at ¶ 25; Stip. at ¶ 23.

The settlement certificates may be used to purchase any products or services sold by Wi Spa, including taxes, gratuities, and entrance fees. They are valid for six months from date of issuance and are fully transferable without limitation. They must be used in a single transaction (e.g. any unused amount will be forfeited) and they may not be redeemed for cash. As indicated on Wi Spa's website www.wispausa.com, its services range in cost from $5 to $150, with many priced under $100. All settlement certificates can be used to purchase individual services without the need to make any additional purchase. Gaines Decl. at ¶ 26; Stip. at ¶ 31.

Attorneys' fees and costs are recoverable under FACTA (15 U.S.C. § 1681n(a)(3)), and Defendant has agreed to pay Plaintiff's counsel Court awarded attorneys' fees and costs, not to exceed $250,000, without opposition. Gaines Decl. at ¶ 27; Stip. at ¶ 50.F.

Finally, Defendant has agreed to pay the named Plaintiff an enhancement payment, not to exceed $6,000, as awarded by the Court, and all costs necessary to administer the settlement as detailed in the Settlement Agreement. Gaines Decl. at ¶ 28; Stip. at ¶ 50.G.

### b. Settlement Certificates are Appropriate Consideration in the Context of This Case

The Class Action Fairness Act of 2005 ("CAFA") addresses the award of attorney fees in coupon-based settlements. *See* 28 U.S.C. § 1712(a)-(c). It does not, however, contain any prohibition on coupon settlements; it merely requires that the

Court carefully consider whether the consideration paid to the Class is fair, reasonable and adequate:

> In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members…

28 U.S.C. § 1712(e).  "Although the 'fair, reasonable, and adequate' language used in section 1712(e) is identical to the language relating to settlement approval contained in Fed. R. Civ. Pro. 23(e)(2), several courts have interpreted section 1712(e) as imposing a heightened level of scrutiny in reviewing such [coupon-based] settlements."  *True v. American Honda Motor Co.*, 749 F.Supp.2d 1052, 1069 (C.D. Cal. 2010).

Although Plaintiff contends that the settlement and entrance certificates which the Settlement provides are not coupons (because they can be used to purchase entire products at Defendant's store, not merely provide a discount on products or services), even if they were, they are fair compensation for the claims being released.  They have real value to thousands of people who are known customers of Wi Spa and who are likely to use the certificates.  The products and services which they can be used to purchase (at Wi Spa) are products and services which Class Members have shown an interest in and have purchased within the past two years.  Class Members may also sell their certificates to obtain cash for them.

Perhaps more importantly, their value is significant in light of a potential recovery at trial.  Known customers who submit documentary evidence showing they were subject to FACTA violations will receive $145 in settlement and entrance certificates – net of attorneys' fees and costs.  This is 145% of what they could receive in cash if they prevailed on their claims at trial and were awarded minimum statutory damages.  While non-cash benefits arguably have less value to Class

- 17 -

Members than cash, based on the high value of these benefits, Class Members are afforded a significant benefit here.

### 3. The Settlement's Financial Terms Reflect a Fair Discount off the Maximum Value of the Case Based on Litigation Risks, and The Terms Are Far More Favorable Than Other Similar FACTA Settlements

While the settlement consideration arguably offers Class Members who can best prove their claims (i.e. those with documentary evidence) more than they could obtain at trial (albeit in a non-cash form), the case is resolved on a claims made basis so Defendant may pay out less than its maximum exposure at a class trial.[3]

In any case, a substantial discount on the maximum value of the case is warranted in light of the significant risks going forward.

Class certification is challenging to obtain in FACTA cases, and when it can be obtained, some Courts have declined to certify a class as broad as Plaintiff seeks.  In *Rowden v Pacific Parking Systems* (C.D. Cal. 2012) 282 F.R.D. 581, 587, Judge Carney declined to certify a class on FACTA claims, finding that a class action was not a superior means to adjudicate the case, the class was not ascertainable, and a class action would be unfair.  .  In *Tchoboian v. FedEx Office and Print Services, Inc.*, (C.D. Cal., No. 8:10-cv-01008-JAK-MLGx), Judge Kronstadt tentatively certified a class on FACTA claims, but limited it to only those individuals who have maintained their printed receipts displaying the allegedly improper digits with such transactions and account numbers concerning only consumer cards (Docket no. 135, Civil Minutes dated April 23, 2012).

Recovery on the merits on a classwide basis is also not guaranteed here. Defendant's defenses to certification and liability are an important basis for validating the reasonableness of the settlement amount.  Defendant has consistently

---

[3] It is important to note that the partial claims made payout is the only plausible settlement structure here; Defendant does not have records to identify Class Members, so self-identification of class membership is necessary.

maintained that it has ample legal and factual grounds for defending this action on both class and merits issues.  For example, Defendant argues that it did not "willfully" violate FACTA (and, hence, had no liability to Plaintiff or Class Members under the statute) because it did not discover it was printing expiration dates, and did not know the law even existed, until this lawsuit was filed.  Gaines Decl. at ¶ 15.

In light of these risks, the settlement's compromise is fair.  Indeed, it is more favorable for Class Members than other similar settlements which have been approved as fair by California federal courts, as shown below:

| Case Name | Case No. | Claim Required? | Consideration Offered to Each Class Member |
|---|---|---|---|
| Ragsdale v. SanSai USA, Inc. | 07cv1246-WQH (CAB) (S.D. Cal.) | Yes | $3 or $5 gift certificate |
| Bateman v. American Multi-Cinema, Inc. | 2:07-cv-00171-JFW-AJW (C.D. Cal.) | Yes | $23 worth of free popcorn |
| Sakamoto v. One Parking, Inc. | 8:11-cv-01249 MLG (C.D. Cal.) | No | 17 days of free parking provided to the general public on random days over a 2 month period |
| Tchoboian v. FedEx Office and Print Service, Inc. | 8:10-cv-01008-JAK-MLG (C.D. Cal.) | Yes - must submit a defective receipt | $50 store credit |
| **Carter v. Wi Spa** | 2:13-cv-00580-SVW-CW (C.D. Cal.) | **Partial** | Between $10 and $145 in gift/entrance certificates |

Gaines Decl. ¶ 16.

\\

\\

\\

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**B.** **The Settlement is the Product of Serious, Arm's-Length, Informed Negotiations and There are no Indications Present to Doubt its Fairness**

The Parties engaged in arm's-length, informed negotiations during the course of this litigation in order to reach the proposed Settlement. Gaines Decl. at ¶¶ 10-16.

The judgment of experienced counsel is also an important factor in a court's determination that negotiations were fair and informed. Absent fraud and collusion, the court may not only *rely* upon the judgment of experienced counsel, but should be hesitant to "substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Officers for Justice v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Furthermore, the involvement of an objective, third-party neutral tends to demonstrate the presence of arm's-length negotiations. *See Martens v. Smith Barney*, 181 F.R.D. 243, 262-63 (S.D.N.Y. 1998).

Class Counsel have conducted significant investigation and discovery into the facts of this class action case. Defendant has produced documents and information, all of which were reviewed and analyzed in advance of settlement negotiations. Gaines Decl. at ¶ 13.

Based on this investigation and evaluation, Plaintiff's counsel firmly believe the Settlement, on the terms set forth in the Stipulation, is fair, reasonable, adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay, the risk the Settlement Class will not be certified by the Court, defenses asserted by Defendant, and numerous potential appellate issues. Preliminary approval of the Stipulation of Settlement is appropriate. Gaines Decl. at ¶¶ 6, 10-27.

## VI. PROVISIONAL CLASS CERTIFICATION IS APPROPRIATE

The Named Plaintiff may, at the preliminary approval stage, request that the Court provisionally approve certification of the class for settlement purposes, conditioned upon final approval of the settlement. 4 *Newberg* § 11.26 (the court's

- 20 -

findings "at a preliminary hearing or conference concerning a tentative settlement proposal . . . may be set out in conditional orders granting tentative approval to the various items…. These conditional rulings may approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.") Before a court evaluates a settlement under Federal Rule of Civil Procedure 23(e), it must determine that the settlement class satisfies the requirements enumerated under Rule 23(a) and at least one of the requirements in Rule 23(b). *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003).  As discussed below, the proposed class meets all of the requirements of certification for settlement purposes.

### A.   FRCP 23(a) Requirements For Class Certification Are Met

Preliminary approval of the Settlement is justified because the class certification requirements exist for the Settlement Class.  Rule 23(a) provides the factors that the Court looks to for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  All four of these elements are satisfied by the proposed class for Settlement purposes.

### 1.   Numerosity

If the class is sufficiently large that joinder of all members is impractical or that individual joinder is impractical, the numerosity requirement is met.  *See Cox v. American Cast Iron Pipe*, 784 F.2d 1546, 1557 (11th Cir. 1986).

Wi Spa has generated approximately 70,000 receipts during the applicable period, and estimates the Class contains thousands of members.  Therefore, joinder of individual claims would be impractical and the numerosity requirement is satisfied for settlement purposes.  Gaines Decl. at ¶ 30.

\\

\\

### 2.    Commonality

The commonality requirement of Rule 23(a) is met if there are common questions of fact and law among the class.  *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class").  Here, the Settlement Class Members all seek the same remedies under the identical federal law under the same theories of recovery, all relating to the Defendant's alleged failure to truncate the expiration dates of Class Members' credit and debit cards during the applicable class period, in violation of FACTA.  The same factual predicates apply to each and every Class Member.  The Settlement compensates Class Members for these identical claims.  Gaines Decl. at ¶ 31.  Under these circumstances, the commonality requirement is satisfied for settlement purposes.  *Id.* at 1019-20; *see also Cox*, 784 F.2d at 1557.

### 3.    Typicality

The typicality requirement of Rule 23(a) is met if the claims of the Named Plaintiff are typical of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Factual differences may exist between the Class and the Named Plaintiff, provided the claims arise from the same events or course of conduct and are based upon the same legal theories.  *Id*.  Moreover, the typicality and commonality elements of Rule 23(a) "tend to merge" because both assess whether the claims of the class and the named plaintiffs are sufficiently interrelated to make class treatment appropriate.  *Gen. Tel. Co. of the SW v. Falcon*, 12 S.Ct. 2364, 457 U.S. 147, 157 n. 13 (1982).

Here, Plaintiff Carter's claims are not only typical of those of all Class Members – they are identical.  Plaintiff alleges the Defendant failed to truncate the expiration date of her credit card number on the printed receipt that Defendant provided to her at the point of sale – Plaintiff Carter alleges that this violates FACTA and subjects Defendant to statutory penalties.  This is the same claim alleged on

behalf of all Class Members.  Gaines Decl. at ¶ 32.  Plaintiff satisfies the typicality requirement for settlement purposes because her claims arise from the same factual basis and are based on the same legal theories as those applicable to all Settlement Class Members. *Welmer v. Syntex* 117 F.R.D. 641, 644 (N.D. Cal. 1987).

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that the named plaintiff and class counsel fairly and adequately represent and protect the interests of the class.  If the Named Plaintiff and Class Counsel have no interests adverse to the interest of the proposed class members and are committed to vigorously prosecuting the case on behalf of the class, then the adequacy requirement is met.  *Hanlon*, 150 F.3d at 1020; *see also Griffin v. Carlin*, 755 F.2d 1516 (11th Cir. 1985).

Here, Plaintiff Carter has interests directly aligned with all Class Members and has prosecuted this case on their behalf.  She has no apparent conflicts with Class Members.  She has demonstrated her commitment to prosecute this Action on their behalf through its conclusion.  Gaines Decl. at ¶ 33.

Under the proposed Settlement, Ms. Carter will request a small enhancement payment – $6,000 – for her time and efforts, including assisting Class Counsel with factual issues surrounding the case as well with settlement discussions.  This award represents a small percentage of the total value of the settlement consideration, and therefore does not constitute a sufficient conflict of interest to foreclose fulfilling the adequacy requirement.  *See* Stip. at ¶ 54.G; Gaines Decl. at ¶ 34.

Additionally, Plaintiff's counsel are highly experienced litigators, with more than six decades of collective litigation experience.  As evidenced by the declarations of Daniel F. Gaines filed herewith, Gaines & Gaines, APLC has substantial experience prosecuting complex class action cases, both in the consumer and employment contexts.  As such, there is no conflict of interest between the Named Plaintiff, proposed Class Counsel, and the Settlement Class Members, and the adequacy element is met.  Gaines Decl. at ¶¶ 2-5, 35.

### B.     FRCP 23(b)(3) Requirements for Class Certification are Met

The proposed Settlement Class also meets the requirements of Rule 23(b)(3) for settlement purposes because: 1) common questions predominate over questions that affect individual members; and 2) class resolution is superior to other available methods of adjudication.  When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-620 (1997).  A showing of manageability at trial is unnecessary; the dispositive inquiry at this stage is "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id.* at 618-20, 623; *see also Hanlon*, 150 F.3d at 1022.

### 1.     Predominance

The claims of the Settlement Class here are sufficiently cohesive to warrant certification.  For settlement purposes, common questions of fact and law affecting proposed Class Members in this case clearly predominate over questions that may affect individual members.  In analyzing predominance, as with commonality, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Cox*, 784 F.2d at 1557.  The test is whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  Here, the proposed Settlement Class is sufficiently cohesive because all Settlement Class Members share a common nucleus of facts and potential legal remedies – the same facts and law govern their claims; this Court could try their claims in representative fashion by common evidence regarding Plaintiff's and Class Members' claims, and identical law applies.  All of the Settlement Class Members seek statutory damages based on the same allegations.  As a result, common questions of law and fact predominate here.  Gaines Decl. at ¶ 36.

### 2.     Superiority

Particularly in the settlement context, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.  *See*

*Hanlon*, 150 F.3d at 1023.   The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Id.*   Here, as in *Hanlon*, the alternative method of resolution is thousands of individual claims for relatively small amounts of damages, proving uneconomical for potential plaintiffs because the cost of litigation dwarfs potential recovery. *Id.*

## VII.   THE PROPOSED CLASS NOTICE IS APPROPRIATE

### A.     The Class Notice Satisfies Due Process

The Long Form Class Notice, attached as Exhibit "1" to the Stipulation of Settlement, is intended to apprise all known customer Class Members of the litigation and their options under the Settlement.   This proposed notice meets the standards set forth in Rule 23(c)(2)(B) for classes certified under Rule 23(b)(3).   Defendant has either the email address or mailing addresses for approximately 4,600 potential class members (Wi Spa's known customer list).   The Long Form Class Notice shall be provided to these individuals by U.S. first class mail or email.   Stip at ¶ 62.

In addition, the Short Form Notice, attached as Exhibit "2" to the Stipulation of Settlement, is intended to apprise additional Class Members of the litigation by publication in the Los Angeles Times twice within the Claims Period.   The Short Form Notice will be published in a size no smaller than one-quarter (1/4) page.   Stip at ¶ 63.   It is the parties' intention that these forms of notice will sufficiently apprise Class Members of the action and the Settlement.

Wi Spa's website will also contain a link to a settlement website, which shall be accessible on the Internet.   The settlement website will contain the notices, claim form, relevant Court documents, information about the final fairness hearing date, time, and location, and permit Class Members to submit a claim online.   Stip at ¶ 64.

### B.     The Proposed Notice is Accurate and Informative

The proposed notices provide information on the meaning and nature of the proposed settlement and Settlement Class, the terms and provisions of the Settlement, the relief the Settlement will provide Settlement Class Members, the amount of the

proposed service payment to Named Plaintiff, the amount of attorneys' fees and costs that Class Counsel may request, and the date, time and place of the final approval hearing.  The notices clearly and accurately describe the nature of the action, the definition of the Settlement Class, and the class claims.  *See* Exs. "1" and "2" to Stipulation.  The notices also inform class members that they may enter an appearance through counsel if they so desire, indicate that the Court will exclude from the class any member who requests exclusion, and explains the binding nature of class judgment under Rule 23(c)(3).  *Id.*  The notices also provide class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A).  *Id.*

Further, the notices also fulfill the requirement of neutrality in class notices. *See* 2 *Newberg* § 8.39.  They summarize the proceedings to date, Plaintiff's allegations, and the terms and conditions of the Settlement, in an informative and coherent manner, in compliance with the *Manual's* statement that "the notice should be accurate, objective, and understandable to Class Members. . . ." *Manual* (Third) at § 30.211.  The notices clearly state that the Settlement does not constitute an admission of liability, and recognizes that the Court has not ruled on the merits of the action.  They also state that the final Settlement approval decision has yet to be made. Accordingly, the notices comply with the standards of fairness, completeness and neutrality required of a settlement class notice disseminated under authority of the Court. *See* Fed. R. Civ. P. 23(c)(2), 23(e); 2 *Newberg* §§ 8.21, 8.39; *Manual* (Third) §§ 30.211, 30.212.

## VIII.  A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is the formal hearing, at which the Court may hear all evidence and argument necessary to evaluate the Settlement. At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of Settlement approval, and members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the

- 26 -

Settlement Agreement. The parties recommend that the hearing be held approximately 121 days after preliminary approval by the Court, or on or about November 21, 2013, which would give the Parties sufficient time to complete the administration process and the notice program. At the same time, Plaintiff will file and brief her application for an award of attorneys' fees and costs, and for the Plaintiff's service enhancement.

## IX.   CONCLUSION

The Settlement is fair and reasonable and all of the requirements for preliminary approval are met. The Court is therefore requested to grant this motion and enter an order in the form submitted concurrently herewith.


DATED: June 10, 2013                    Respectfully submitted,

                                        GAINES & GAINES,
                                        A Professional Law Corporation


                                        By:   /s/  Daniel F. Gaines
                                              KENNETH S. GAINES
                                              DANIEL F. GAINES
                                              ALEX P. KATOFSKY
                                              Attorneys for Plaintiff Catherine Carter
                                              and Proposed Class Counsel

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT